## CHARLES E. HIRES CO. v. PORTO RICO INTERNATIONAL CORPORATION et al.

(District Court, S. D. New York. July 11, 1922.)

1. Shipping ⬅175—Failure of charterer to have cargo ready does not relieve liability for delay.

Ordinarily the failure of a charterer to have the cargo in readiness for loading does not relieve him from responsibility for delays suffered by the vessel without her fault.

2. Shipping ⬅175—Charterer not liable for delay in loading caused by government seizure of cargo.

If the coal intended for delivery to the chartered vessel was commandeered for public use in time of war, and the vessel was not given berth on account thereof, the charterer would be released from liability on the ground that such emergency came within the exception in the charter party.

3. Admiralty ⬅66—Proposed amendment to answer permitted, notwithstanding objection of laches.

A proposed amendment to the answer, raising the issue that the cargo for the chartered vessel was commandeered by the government, may be permitted, notwithstanding the objection by libelant based on laches in asserting the defense, where there was no claim of surprise by libelant or expressed intention of controverting the testimony taken.

4. Shipping ⬅184—Charterer has burden of proving seizure of cargo by government, causing delay in loading.

On libel against charterers for delay in loading the vessel, the burden is on respondents to establish their defense that the commandeering by the government of the cargo intended for the vessel caused the delay.

5. Shipping ⬅184—Evidence held not to show delay in loading resulted from government seizure of cargo.

Evidence that the government commandeered during the war all the coal of a dealer from whom charterers expected to procure the cargo for the vessel, but not showing that the cargo could not be procured from other dealers in the vicinity, or shipped in from elsewhere, is insufficient to establish the defense that the delay in loading was caused by the act of the government.

---

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**6. Shipping ⊕⇒175—Cesser clause held not to have relieved charterer of liability for delay in loading.**

Since the vessel has the right of maritime lien for demurrage on the cargo, regardless of the charter party provision for a lien for freight, a charter providing that the merchant should pay the stipulated amount for detention of the vessel at the loading port did not manifest an intention that the cesser clause should relieve the charterer of liability for demurrage at the port of loading.

In Admiralty. Libel by the Charles E. Hires Company against the Porto Rico International Corporation and another. Decree rendered for libelant.

Bigham, Englar & Jones, of New York City, for libelant.

Leo. J. Curren, of New York City, for respondents.

HAZEL, District Judge. The schooner Frank A. Morey was chartered by respondents for a voyage with a cargo of coal from Newport News to Hamacao, Porto Rico. There was delay in loading, and no berth was designated by respondents within the time specified in the charter party. Her detention lasted until December 19, 1917, and demurrage at the rate of $200 per day, the amount stipulated in the charter party, from December 10 to December 19, 1917, or some 10 days from the expiration of lay days, is demanded in the libel.

The defenses are: First, that loading the vessel was delayed because the government commandeered the coal intended for her; and, second, that respondents' liability under the charter party ended when the vessel issued the bill of lading for the cargo taken aboard.

[1, 2] Ordinarily failure of a charterer to have the cargo in readiness for loading does not relieve him from responsibility for delays suffered by the vessel without her fault, and the vessel must be loaded with reasonable dispatch after arrival in port and availability of her berth. If the coal for delivery was commandeered for public use in time of war, and the vessel was not given berth on account thereof, then, true enough, they would be released from liability, as a seizure under such emergency was an occurrence coming within the exception on the charter party, and any fault for delays of that nature would not be attributable to them.

[3–5] The proposed amendment to the answer raising this issue is objected to by libelant because of laches upon the part of the parties asserting it; but since there was no claim of surprise by libelant, or expressed intention of controverting the testimony taken, the answer will be received. The burden, however, of establishing such a defense rested upon respondents, and in my opinion there has been a failure to maintain it. The evidence shows that quantities of coal belonging to the Berwind-White Company were seized by the government; but such seizure, standing alone, does not prove that other coal for shipment on respondents' order was unavailable, or that other coal could not have been loaded aboard the vessel. The witness McIntyre testified that Berwind-White did not have the physical coal at Newport News, due to the fact that the commandeered coal reduced its credit in pool

⊕⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

No. 1 of the Tide Water Coal Exchange—a method adopted by dealers to facilitate prompt departures of coal cargoes at Newport News.

It does not satisfactorily appear that coal could not have been brought to the loading port for delivery to the schooner by Berwind-White Company, or that respondents did not actually have access to sufficient coal at Newport News for the transportation in question, or that coal could not have been procured from nearby localities. It is to be inferred that respondents expected to obtain their cargo from the Berwind-White Company, but some other dealer, perhaps, could have supplied it, if all the coal of the Berwind-White Company was actually seized by the government. The record is silent as to the availability of other coal in sufficient quantities, or as to why other coal was not brought to the dock. Hellenic Transport S. S. Co. v. Archibald McNeil & Sons Co., Inc. (D. C.) 273 Fed. 290; Canute v. Diamond Fuel Co. (D. C.) 273 Fed. 101. It was suggested at the hearing that the seller of the coal had coal at Lamberts Point, a point not far distant from Newport News; but, though the evidence does not satisfactorily establish this, I nevertheless think the evidence insufficient to prove vis major.

[6] Does the cesser clause release the charterer from liability? The vessel has the right of maritime lien for demurrage on the cargo, regardless of the charter party providing for a lien on cargo for freight. The charter party includes a clause that the merchant shall pay the stipulated amount for each day's detention of the vessel at the loading port, and the consignee of the cargo, if the expense is incurred at the port of discharge. The intention of the parties is, I think, plainly indicated; i. e., that the cesser clause should not relieve the charterer from liability for demurrage at the port of loading. See Crossman v. Burrill, 179 U. S. 100, 21 Sup. Ct. 38, 45 L. Ed. 106.

The libelant may have a decree, with costs.

⬅️For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes